# Siegel *v.* The Netherlands Company, Inc., Appellant.

*Landlord and tenant—Fraudulent debtors' attachment—Bulk Sales Act of March 28, 1905, P. L. 62—Trespass—Interpleader—Damages.*

1. Where a tenant of a leased store sells in bulk his stock of goods and delivers them to the purchaser at a time when he owes no rent to his landlord, the latter has no right to issue an attachment under the Fraudulent Debtors' Act, and attach the goods in the hands of the purchaser on the ground that the purchaser and tenant had violated the Bulk Sales Act of March 28, 1905, P. L. 62, by failure on their part to notify the landlord of the sale.

2. In such a case the purchaser of the goods may maintain an action of trespass against the landlord for abuse of civil process, without being required to prove malice and want of probable cause; and he can maintain such an action although he has intervened in interpleader proceedings to test the title to the goods, and such proceedings are undetermined when the trespass suit is tried.

3. The measure of damages in such a case, is the expenses and loss the plaintiff has been put to in getting his property back, including any loss incurred by its seizure and detention.

Argued Oct. 16, 1914.   Appeal, No. 82, Oct. T., 1914, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1912, No. 3,579, on verdict for plaintiff in case of Abraham Siegel v. The Netherlands Company, Inc.   Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Trespass to recover damages for an alleged wrongful attachment of a stock of goods.   Before PATTERSON, J.

From the record it appeared that the writ of attachment indicated that Joseph J. Goldsmith was indebted to the Netherlands Company in the sum of $7,500. The affidavit for the writ averred that the defendant had removed a part of his property and effects, and was about to remove his property out of the jurisdiction of this commonwealth with the intent to defraud his creditors.

The sheriff's return was as follows:

"Attached as within commanded November 29, 1911, at One o'clock fifty minutes P. M. certain goods and chattels as per schedule hereto annexed and marked 'A' at No. 129 N. 8th Street, County of Philadelphia, State of Pennsylvania.

"And summoned John Siegal, Garnishee, in whose hands and possession said goods and chattels so attached were found, by handing to him personally on November 29th, 1911, at 1 o'clock 50 minutes P. M. within the County of Philadelphia, State of Pennsylvania, a true and attested copy of the within writ, and making known to him the contents thereof.

"And afterwards said goods and chattels so attached were claimed by Abraham Siegal, whereupon a rule for an interpleader was taken and made absolute, bond and statement filed and feigned issue ordered by the court, which is still pending and undetermined as appears of Record, etc.

"And nihil habet as to Joseph J. Goldsmith, the within named defendant."

At the trial it appeared that Goldsmith had rented a store at 830 Chestnut street from the defendant, and that he had sold the whole stock of goods in the store to Abraham Siegel who had removed the goods to his own store 129 North Eighth street in the city of Philadelphia.

At the time of the sale no rent was actually due.

The court charged in part as follows:

The questions for you to decide in this case are very clearly defined. They are two. The first one is whether the goods which on November 29, 1911, and which were at 129 North Eighth street, Philadelphia, were levied on by the sheriff by virtue of a writ of attachment under the act of 1869, and which was issued on November 28, 1911, out of court of common pleas No. 4, September Term, 1911, No. 422, in which the Netherlands Company was plaintiff, and Joseph J. Goldsmith

was defendant, were the property of Abraham Siegel, the plaintiff in this suit. Were these goods that were levied on at that time and at that place, the property of the plaintiff? If they were not the property of the plaintiff, then your verdict must be for the Netherlands Company, the defendant in this case. If you find that those goods were the property of Abraham Siegel, and were levied upon at the instance of the defendant, through its attorney or agent, then the second question for you to determine is the question of damages. If you find that there were any damages done the plaintiff in this case by reason of this levy, then your verdict must be for the plaintiff, and in such an amount as may compensate him for any damages done him by the levy. [Should you find that the plaintiff's goods were levied upon at the instance of the defendant, then will come the question of the measure of damages, and I may say that you then are to consider what money would compensate the plaintiff for any loss which he suffered as a result of the levy, and this would include any money loss or any orders actually received, and which he could not fill because the sheriff would not allow the goods to go out of the store; also any expense which he had to undergo because of the levy, and this would include any attorney's fee, or any other outlay of money made necessary because of the levy.] [10]

Defendant presented these points:

1. In an action for misuse of process such as this, the plaintiff must aver in his pleadings and prove as a fact at the trial that the defendant was actuated by malice in directing the sheriff to make the levy which is the basis of this suit. There being no averment of malice in the pleadings, I direct you to find a verdict for the defendant. *Answer:* The first point is refused. [1]

2. If you find that the defendant was not actuated by malice in directing the sheriff to make the levy which is the basis of this suit, then your verdict must be for the defendant. *Answer:* That is refused. [2]

3. In an action for misuse of process such as this, the plaintiff must aver in his pleadings and prove as a fact at the trial that the defendant did not have reasonable probable cause for directing the sheriff to make the levy which is the basis of this suit. There being no averment of lack of reasonable and probable cause in the pleadings, I direct you to find a verdict for the defendant. *Answer:* That is refused. [3]

4. In an action for misuse of process such as this, the determination of whether or not the plaintiff has proved that the defendant did not have reasonable and probable cause for directing the sheriff to make the levy which is the basis of this suit, is a question for the court and not for the jury. The plaintiff has not furnished such proof. I therefore direct you to find a verdict for the defendant. *Answer:* That is refused. [4]

5. The plaintiff having failed to allege and prove the termination of the case of the Netherlands Co. v. Goldsmith, in the court of common pleas No. 4, of Philadelphia county, December Term, 1911, No. 422, I direct you to find a verdict for the defendant. *Answer:* That is refused. [5]

6. The plaintiff having voluntarily become a party in the case of the Netherlands Co. v. Goldsmith, in the court of common pleas, No. 4, of Philadelphia county, December Term, 1911, No. 422, and there made claim to the goods the title to which he claims herein, is barred from the prosecution of this suit. I therefore direct you to find a verdict for the defendant. *Answer:* That is refused. [6]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned* were above instructions, quoting them.

*Monroe Buckley,* with him *Charles H. Burr,* for appellant.—The plaintiff was bound both to allege and prove malice and want of reasonable and probable

cause: Mayer v. Walter, 64 Pa. 283; M'Cullough v. Grishobber, 4 W. & S. 201; Emerson v. Cochran, 111 Pa. 619; Humphreys v. Sutcliffe, 192 Pa. 336; Robitzek v. Daum, 220 Pa. 61; Roessing v. Pittsburg Rys. Co., 226 Pa. 523.

Proof of the termination of the prior action was necessary: Mayer v. Walter, 64 Pa. 283; Emerson v. Cochran, 111 Pa. 619.

The plaintiff, having voluntarily elected to become a party to the attachment action and made claim to the goods attached and, after a sheriff's interpleader had been awarded, proceeded with the prosecution thereof, is barred from the prosecution of this suit: Larzelere v. Haubert, 109 Pa. 515; Morrison v. Nipple, 39 Pa. Superior Ct. 184; Birch v. Conrow, 161 Pa. 118.

The sale by the attachment defendant to the plaintiff herein of the business of the former was fraudulent and voidable as to his creditors, of whom the defendant herein was one: Wilson v. Edwards, 32 Pa. Superior Ct. 295; Gannard v. Eslava, 20 Ala. 732; McCullough v. Grishobber, 4 W. & S. 201; Keel v. Larkin, 72 Ala. 493.

*William F. Berkowitz*, with him *Samuel W. Salus*, for appellee.

OPINION BY KEPHART, J., February 24, 1915:

Plaintiff was the owner of a store at 129 N. Eighth street, Philadelphia, having purchased it from Joseph Goldsmith November 1, 1911. Goldsmith owned another store at 830 Chestnut street, having leased the room for this store from the defendant in this case. On November 27, 1911, Goldsmith removed all the goods from the Chestnut street store, whereupon the defendant caused an attachment to be issued under the fraudulent debtor's act of 1869, to attach goods of the defendant at 129 N. Eighth street, the claim being for rent for the balance of the term for the Chestnut street store. The

basis of this claim for rent was the violation of the terms of the lease, which caused the whole amount of the rent to become immediately due, Goldsmith having paid the rent up to and beyond the date the attachment was issued. The reason assigned for attaching the goods at the Eighth street store was because of a violation of the Bulk Sales Act of March 28, 1905, P. L. 62, by failure on the part of Goldsmith and the plaintiff in this case to notify this defendant, who claimed to be a creditor of the vendor.

The command of the writ to the sheriff was that the defendant, Goldsmith, be attached by any property in his possession and in case such property be found in the possession of another person, that person be summoned, etc. In execution of this writ and under the instructions received, the sheriff closed plaintiff's Eighth street store and kept it closed until the goods were released through proceedings under the sheriff's interpleader act. Before the trial of the feigned issue in the interpleader proceedings, and some months after those proceedings were instituted, this plaintiff brought an action of trespass for the wrongful seizure and detention of his goods by the defendant, the Netherlands Company, by virtue of the attachment against Goldsmith. A judgment having been found in the plaintiff's favor, this appeal was taken.

The jury, by their verdict, determined that the goods were the plaintiff's. In their seizure by the sheriff he exercised such dominion over the plaintiff's property that would constitute a trespass. The person directing the seizure was liable with the sheriff for any injury that would result to the owner: Welsh v. Bell, 32 Pa. 12; Rogers v. Schadt, 218 Pa. 617. This is the appellee's contention. The appellant urges that inasmuch as the fraudulent debtor's attachment was legal and regular, the seizure of the goods of this plaintiff thereunder was a misuse of the writ or process, and before recovery could be had against this defendant malice and want of probable cause must be shown.

In a "misuse," the issuance of the writ is unjustifiable. In an "abuse," the issuance of the writ is legal. "Abuse of process is the employment of it for an unlawful object, a perversion of it, e. g., to extort money, to compel the surrender of a deed or other thing of value, or the like; and misuse, simply a malicious use of it where no object is contemplated to be gained by it other than its proper effect and execution: Mayer v. Walter, 64 Pa. 283:" Grohmann v. Kirschman, 168 Pa. 189.

All the authorities cited on the question deal directly with the litigants in the proceedings wherein abuse or misuse of process is alleged. None of the cases seem to consider a third person whose rights have been affected through an abuse of a writ or process. This is our case. If the question of malice and probable cause are to be considered as bearing upon the question here involved, the facts would show an abuse of process and not a misuse of it; as the writ of attachment was regularly issued and the facts sufficient to ground its issuance have not been questioned; the writ is legal on its face, but the officer was commanded to levy on Goldsmith's goods not on the goods of a stranger. In executing the writ he took goods that did not belong to Goldsmith nor were they in his possession nor intermingled with his goods, but they were in the possession of a stranger. He did an act clearly outside of the authority conveyed to him by the express terms of the writ itself. Malice and probable cause need not be shown in the abuse of a civil process: Mayer v. Walter, supra.

We feel that the question of malice and probable cause are wholly foreign to this case and they can only be considered when, through the very nature of the proceedings, it is necessary to inquire into the motives of persons who cause a writ to be issued or a proceeding to be instituted. Where one is in the possession and enjoyment of his property and another intermeddles with it, why should it be necessary for him to show that the intermeddler was actuated by malice and had no reason

to thus intermeddle with his goods?  Why should the facts in this case be treated any differently than an ordinary trespass case where a person willfully enters the land of another and commits a depredation thereon? Malice and probable cause need not be shown to support a recovery in an action of trespass.  It must be remembered, that the articles in question were not in the possession of the defendant in the attachment, they were not intermingled with his goods, there was nothing about them which indicated any apparent ownership in him, and where goods are so situated a different question would arise.  When property is in the ownership and possession of a third person, this condition gives notice to the sheriff and to those dealing with him that in seizing the goods as the property of another they act at their peril.  The owner has done everything that he could to label the goods with the badge of ownership.  The sheriff and those acting with him cannot protect themselves under a writ which gives them no authority to act in the premises. The first, second, third and fourth assignments of error are overruled.

But it is urged that inasmuch as the sheriff's interpleader was undetermined when the trespass suit was tried, and as the plaintiff had joined in the interpleader proceeding, he cannot now recover.  In the interpleader proceedings the title to the goods levied on is before the court.  It is an action brought for the protection of the sheriff.  It does not enable the claimant to the goods to have redress for such damages as he may have suffered by reason of the unlawful seizure.  It is only through his action of trespass that he can secure this redress.  When he files his bond the possession of the goods is turned over to him.  He gains nothing by the favorable determination of that cause.  The execution creditor, intent upon securing his money, is primarily interested in forcing the issue, and where he permits the trial to be neglected for a long period of time, as in this case, nearly two years after the case was

ready for trial, he should not be heard to complain as to the interpleader proceedings not being determined. And further, considering the act as an independent trespass, we know of no rule of law which postpones the right of the plaintiff in this case to that of some other action pending in the courts, wherein some of the same questions may be involved. It is difficult to see just why the plaintiff should be subjected to the hazard of pursuing a remedy which may limit to some extent his ability to recover from the defendant, who may, through lapse of time, become irresponsible. The plaintiff is not the aggressor. His acts did not create the condition which the defendant finds itself in to-day. Under this action of trespass the plaintiff must prove his title with the same measure of proof that he would be required to produce in the interpleader proceedings, and at the same time he disposes of the question of damages for the unlawful seizure and detention.

It is questionable to my mind, the title having been thus fixed in the action of trespass, whether this could not be pleaded in the interpleader proceedings on the question of title. As attacking this title, the violation of the bulk sales act, on which the execution creditor relied to defeat the sale, was set up as a defense by the appellant, wherein the jury was requested to find that if the plaintiff had failed to give the notice required by the bulk sales act and require from Goldsmith a list of his creditors, the said plaintiff was not entitled to recover.

Was the plaintiff precluded from recovering because he became a party to the interpleader proceedings? Under the authority of Larzalere v. Haubert, 109 Pa. 515, it would seem that the Supreme Court, at one time held that the plaintiff would be so debarred, but in the case of Birch v. Conrow, 161 Pa. 118, with the case of Larzalere v. Haubert, supra, before them, they sustained the position that even though the claimant voluntarily appeared in the interpleader proceedings, filed his narr and bond in the case, and went to trial,

he could recover in an action of trespass for the wrongful abuse of a civil process. We see no reason why the claimant should be prevented from recovering the damage he has suffered, merely because he took the only steps which the law provides to recover specific property. In Larzalere v. Haubert, supra, it was held if the sheriff unnecessarily delayed in the application for the rule the claimant might proceed in trespass. Here the defendant and sheriff, knowing of the plaintiff's claim, contested every move to have the property released and by so doing "unnecessarily delayed in the application for the rule." The fifth, sixth, eighth, ninth, eleventh, twelfth, thirteenth and fourteenth assignments of error are overruled.

The violation of the bulk sales act comes from the fact that at the time the attachment was issued Goldsmith had moved from the Chestnut street store, and having done so clandestinely, the entire amount of the rent fell due. The plaintiff purchased the Eighth street store from Goldsmith on November 1, 1911. At the time he purchased them Goldsmith was not a debtor to the defendant in this case in any specified sum for rent. He had paid up his rent as required by his lease. What standing had he, as creditor, to the notice required by the bulk sales act of 1905? Goldsmith was, for some time after the sale, in the possession of the Chestnut street store with his rent fully paid. While his subsequent acts may have caused a document which was otherwise not an indebtedness to become an indebtedness for a certain sum, the act of 1905 treats of conditions as they exist at the time the vendor and vendee contemplate and make sale and purchase of goods as provided in the act. On the day the sale was made no rent on account of the Chestnut street lease was then due to the defendant; the defendant company was not a creditor under the terms of the bulk sales act of March 29, 1905. The seventh assignment of error is overruled.

The measure of damages to be applied to the facts in this case would be the expenses and loss the plaintiff had been put to in getting his property back, including any loss incurred by its seizure and detention: Hyde v. Kiehl, 183 Pa. 414. This was substantially the measure of damages adopted by the court below. The tenth assignment of error is overruled.

Judgment affirmed at the cost of the appellant.